No. 22-1826

IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

ABRAR OMEISH,

*Plaintiff-Appellant,*

v.

STACEY KINCAID,

*Defendant-Appellee.*

Appeal from the United States District
Court for the Eastern District of Virginia

## BRIEF OF PLAINTIFF-APPELLEE
## ABRAR OMEISH

February 9, 2022

Lena F. Masri
Gadeir I. Abbas*
Justin Sadowsky
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave. SE
Washington, DC 20003
(202) 742-6420

*Counsel for Plaintiff-Appellant*

*\*Gadeir I. Abbas licensed to
practice in Virginia only.
Practice limited to federal
matters.*

## TABLE OF CONTENTS

TABLE OF CONTENTS .............................................................i

TABLE OF AUTHORITIES ................................................... iii

QUESTIONS PRESENTED....................................................1

INTRODUCTION ................................................................2

STATEMENT OF FACTS AND THE CASE .............................4

   I.   Kincaid takes and retains a photo of Omeish without hijab against her sincerely held religious beliefs...........................................4

   II.   Omeish successfully sues Kincaid under RLUIPA. .......................6

SUMMARY OF ARGUMENT ..............................................9

STANDARD OF REVIEW...................................................12

ARGUMENT .....................................................................12

   I.   There is a difference between a violation and a remedy...............12

   II.   The undisputed evidence was that Kincaid's taking and retention of the photograph violated her right to be seen without her hijab on either in person or in photographs.......................................16

   III.   The Summary Judgment Order was not beyond the scope of the case. 20

   IV.   Omeish obtained relief from the injunction. ...............................21

   V.   The Relief sought did not go beyond the powers of the District Court.......................................................................................22

CONCLUSION ..................................................................24

CERTIFICATE OF COMPLIANCE ......................................26

# TABLE OF AUTHORITIES

## Cases

*American Canoe Assoc. v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir .2003) ...................................................................................21

*Chafin v. Chafin*, 568 U.S. 165 (2013) .....................................................12

*County of Los Angeles v. Davis*, 440 U.S. 625 (1979) ...............................12

*French v. Assurance Co. of Am.*, 448 F.3d 693 (4th Cir. 2006) ...............12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167 (2000) ...................................................................................14

*Holt v. Hobbs*, 574 U.S. 352 (2015) .........................................................16

*Iota Xi Chapter Of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138 (4th Cir. 2009) ...........................................................................................13

*Knapp, Stout & Co. v. McCaffrey*, 177 U.S. 638 (1900) ...........................13

*Larson v. Valente*, 456 U.S. 228 (1982) ...................................................13

*Lemon v. Kurtzman*, 411 U.S. 192 (1973) ...............................................14

*Mayor of Baltimore v. Azar*, 973 F.3d 258 (4th Cir. 2020).....................14

*RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361 (4th Cir. 2021) ...................................................................................................12

*Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651 (4th Cir. 2018) ...................................................................................................16

## Statutes

42 U.S.C. § 2000cc–1(a) ...........................................................................14

Va. Code §2.2-3706(A) .............................................................................17

## Other Authorities

Black's Law Dictionary 1320 (8th ed. 2004).........................................13

## Rules

Fed. R. Civ. P. 54(b)................................................................................21

Fed. R. Civ. P. 56(a)................................................................................16

## QUESTIONS PRESENTED

1. Does a justiciable case or controversy still exist when a permanent injunction requires a defendant to take certain actions, and those actions have been taken with nothing more to do?

2. Does the taking and retention of a photograph of Omeish without her hijab no longer violate RLUIPA merely because the relief is limited to the destruction of the photograph?

3. Given that Kincaid violated RLUIPA by taking and retaining a photograph of Omeish without her hijab, did the District Court abuse its discretion by issuing an injunction that required Kincaid to destroy her copies of the photograph and to use her best efforts to get third parties to destroy their copies of the photograph, which they obtained from Kincaid?

## INTRODUCTION

Abrar Omeish is a Muslim community leader and an elected member of the Fairfax County School Board. As a Muslim, she has a sincere religious belief that she should not appear in public—in person or by photograph—without hijab. But when Omeish was pepper sprayed and arrested over a minor traffic violation, Fairfax County Sheriff Stacey Ann Kincaid's officers forcibly removed her hijab and took her photograph. That photograph was then made available to officers at the Sheriff's office as well as other law enforcement agencies and could be obtained by the public with nothing more than a simple FOIA request.

Omeish sued. In addition to the destruction of the photograph, she originally sought damages and a policy change so that a similar violation would not happen again. At the Motion to Dismiss case, the District Court, however, limited the remedy to the destruction of the photograph because of applicable immunity and standing doctrines. Kincaid thinks that limitation on available remedies somehow vindicated her taking of Omeish's photograph. So, according to Kincaid, the only question in this case is whether RLUIPA requires her to destroy copies of a photograph that was supposedly already permissibly in her possession, and to ask

2

other law enforcement agencies to do the same.

That is incorrect. Regardless of the remedy, Kincaid violated Omeish's rights by taking and retaining the photograph of Omeish without her hijab. That violation continued to harm Omeish given the photograph's widespread availability to Kincaid's officers and the officers of other agencies who had access to it. And the risk that a FOIA request or a voluntary publication to the public at large meant continuing risk of even greater harm.

Now, thanks to the District Court's injunction, Omeish is free from that harm. Kincaid destroyed her copy of the photograph and prompted the other law enforcement agencies to voluntarily destroy their copies, as well. No more copies of the photograph exist.

Kincaid contends that the District Court exceeded its power by requiring her to take those actions. Untrue. District courts have broad equitable discretion to impose injunctions that undo the harm caused by unlawful conduct. But even if Kincaid were right, there would be nothing for this Court or the District Court to do about it now. The photos are all destroyed; that cannot be undone. This appeal is moot.

## STATEMENT OF FACTS AND THE CASE

### I.    Kincaid takes and retains a photo of Omeish without hijab against her sincerely held religious beliefs.

Abrar Omeish is a member of the Fairfax County School Board. JA139. She is also Muslim. *Id*.

Based on her Islamic faith, she wears a religious head scarf, known as a hijab, to cover her hair and neck when in public as an expression of modesty, leaving her face completely visible. JA21-JA22; JA333-JA334. Omeish sincerely believes, based on her faith, that she must wear hijab in all spaces that include men who are not part of her immediate family. *Id*. This belief is a pillar of her religious practice. *Id*. Likewise, being photographed without wearing hijab, and having that photo available broadly, is a serious breach of Omeish's sincerely held religious beliefs. *Id*. As Omeish explained, "this is not like taking off a jacket . . . for me, this is like taking off your underwear or something." JA334

On a spring evening in 2019, Omeish was pulled over for failing to come to a complete stop before turning right at a red light. JA210. Because the officer decided Omeish was not responding quickly enough to his instructions, the officer then pepper sprayed her, arrested her, and transported her in handcuffs to Kincaid's Fairfax County Adult

4

Detention Center. JA594; JA786; JA790-JA791. Upon arrival, Omeish repeatedly explained that her sincerely held religious beliefs prohibited her from appearing publicly or being photographed without her hijab on. JA333-JA337. Kincaid's staff found a female deputy to take Omeish's fingerprints and booking photo in response, although the male deputies and the arresting officer remained in view of Omeish through the entire process. JA326.

When it came time to take Omeish's booking photo, Omeish again attempted to explain that it was against her religious beliefs to be photographed or seen in a public place without her head covering. JA333-337. Kincaid's officers halfheartedly tried to accommodate. They held up a small blanket that partially obscured the view of Omeish on one side. But on the other side, the male deputies and arresting officer still had a full view of Omeish, along with anyone else passing by a heavily trafficked area of Kincaid's jail. JA962; JA795; JA379; JA793-JA794.

Omeish then asked to be allowed to simply pull her hijab back behind her ears without removing it for the photograph. JA337-JA338. Kincaid's officers refused. *Id.* The deputy taking the photograph eventually walked over and removed the hijab from Omeish's head

5

completely and took at least three photos of her without her hijab. After that, Kincaid's agents allowed Ms. Omeish to loosely drape the scarf back over her head before taking one more photo with her hijab. JA337-JA338.

Shortly thereafter, the arresting officer walked Omeish to the facility's exit, unlocked her handcuffs, and left her to wait for her ride. JA385. Overall, Ms. Omeish was confined at the Adult Detention Center for less than two hours. JA45.

## II.  Omeish successfully sues Kincaid under RLUIPA.

Omeish sued both Officer Kincaid (in her official capacity) and the Fairfax County Police Department under RLUIPA and the First Amendment for violating her religious beliefs. JA17. She also brought a Fourth Amendment excessive-force claim against the arresting officer that is unrelated to this appeal. *Id*.[1]

The Complaint sought damages under both RLUIPA and Section 1983, as well as injunctive relief in the form of the destruction of the photograph and a policy change to prevent the same injuries from being inflicted on others in the future. JA31. On the Motion to Dismiss, the

---

[1] The excessive force claim is the subject of a different appeal. *See Omeish v. Patrick*, 22-10878. Omeish also brought a First Amendment damages claim against the officer for his role in removing Omeish's hijab, JA17, but abandoned it during summary judgment briefing, JA132.

District Court dismissed the Fairfax County Police Department for lack of direct involvement in Kincaid's booking-photographs policy, SOP 533. JA106. The District Court also dismissed the damages claim, holding that the Fairfax County Sheriff's Office is a state, rather than local, entity, and thus immune under the Eleventh Amendment. *Id*. And the District Court made clear that, under principles of standing, the only injunctive relief available to Omeish was the destruction of the photograph; she lacked standing to seek a change in policy. JA113-JA114. But the District Court declined to dismiss Omeish's RLUIPA claim. JA120.[2]

After discovery, Omeish moved for summary judgment against Kincaid, JA132. The District Court granted the motion JA134. Adopting Omeish's requested remedy, the Court ordered Kincaid to destroy all copies of the hijab-less photograph of Omeish in her possession within 14 days and then submit a status report explaining how she complied with the order. JA1106. The Court also ordered Kincaid to issue, within 14

---

[2] The Court did not reach Omeish's constitutional challenges because they would have been redundant with her RLUIPA claim. Any conduct that would violate the First Amendment necessarily would also violate RLUIPA.

7

days, a written request to destroy the photograph to all other entities that she had reason to believe possessed a copy, including the Virginia State Police and the Fairfax County Police Department. *Id*. The District Court further ordered Kincaid to "use her best efforts to assist all third parties in destruction of the Photograph" and to submit a status report summarizing her progress after 30 days, and "to the extent photographs remain undestroyed, what steps are necessary to ensure their destruction." *Id*. There was no other obligation contained in the injunction. *Id*.

Kincaid filed a notice of appeal. JA1112.

On the 14th day after the District Court issued its permanent injunction, Kincaid filed a status report notifying the Court that all of her office's copies of the photograph were destroyed. JA1114. That same day, Kincaid filed a motion to stay the remaining parts of the Order, including the part requiring her to ask other law enforcement agencies to destroy the photo. JA1144. The District Court denied the stay. JA1146. Shortly thereafter, Kincaid renewed her motion to stay in the Court of Appeals. The Court of Appeals denied that motion as well.

After both stay motions were denied, Kincaid belatedly complied

with the remaining parts of the Permanent Injunction. Kincaid sent requests to the Virginia State Police and Fairfax County Police Department to destroy their copies of the photograph of Omeish without her hijab, and they voluntarily complied. JA1115. During the course of these requests, Kincaid learned that a copy of the photo also had been sent to the FBI. JA1131. Kincaid, working with the Virginia State Police, requested that the FBI destroy their copy, and the FBI voluntary complied, too. JA1146. At this time, there are no known existing copies of Omeish's booking photograph without her hijab.

## SUMMARY OF ARGUMENT

Omeish has a sincere religious belief that she must not be seen, whether in person or in photographs, without her hijab by men outside her immediate family. Kincaid's agents violated Omeish's belief—and thus her rights under RLUIPA—by removing her hijab, taking a photograph of her without her hijab, retaining that photograph, and transmitting that photograph to other law enforcement agencies.

The District Court ruled early on that Omeish's remedy would be limited to the destruction of the photograph. Kincaid argues on appeal that limiting the remedy also limited the potential violation to the

sharing of the photograph with the general public. And, Kincaid says, because Omeish did not establish that Kincaid would publish the photograph for public viewing, Omeish did not prove that her religious exercise was substantially burdened.

But there is a difference between a plaintiff lacking standing to pursue a particular remedy for a violation and the violation not occurring, or the dispute over the violation being moot. So the District Court's holding that the only relief it could order was the destruction of the photograph did not render moot Omeish's claim that Kincaid's taking and retaining the photo was unlawful, much less vindicate Kincaid's actions. Rather, Kincaid's taking and retaining the photograph violated RLUIPA, and that violation, which could be cured by the destruction of the photograph, remained at issue throughout the case.

Kincaid's argument also misses the other ways that the photograph substantially burdened Omeish's religious exercise. While Kincaid retained the photograph, every member of her staff had unrestricted access to it. So did all the officers at three other law enforcement agencies. The photographs could continue to be shared by those law enforcement agencies to others, including members of the public. And it

was subject to mandatory disclosure to members of the public under Virginia's Freedom of Information Act.

Kincaid's arguments that the injunction somehow exceeded the scope of the case, and that Omeish did not benefit from the injunction, similarly rests on misunderstanding the difference between the scope of the violation and the scope of the remedy. The scope of the case was not limited by the District Court's (interlocutory) dismissal of certain remedies from the case at the motion-to-dismiss stage. And Omeish's benefit from the destruction of the uncovered photograph that she does not want the public or strangers to see is apparent.

Finally, Kincaid's argument that the injunction exceeded the District Court's powers is also wrong. Kincaid complains that the injunction bound third parties, who were not before the court, to destroy the photograph. It did not. Instead, the injunction simply required Kincaid to ask the third parties to destroy their copies of the unlawfully taken photograph, which they received from Kincaid in the first place. Each of the third parties voluntarily destroyed the photograph upon Kincaid's request.

In any event, all known copies of the photos have already been

destroyed. There is nothing more for Kincaid, or this Court, to do. This appeal is now moot.

## STANDARD OF REVIEW

Whether a case is moot on appeal may be decided by the Court of Appeals in the first instance. The burden is on the party claiming mootness to show that "(1) it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citations omitted).

This Court reviews grants of summary judgment de novo. *French v. Assurance Co. of Am.*, 448 F.3d 693, 700 (4th Cir. 2006). The scope of a permanent injunction is reviewed for abuse of discretion. *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 375 (4th Cir. 2021).

## ARGUMENT

## I.   There is a difference between a violation and a remedy.

Setting aside the fact that this entire appeal is moot—*see* Suggestion of Mootness; *see also* § V, *below*—the primary flaw running through Kincaid's appeal is a failure to understand the difference between a violation of Omeish's rights and the appropriate remedy for

such a violation. Put differently, Kincaid "confuses mootness with the merits." *Chafin v. Chafin*, 568 U.S. 165, 174 (2013).

Though adjudication of the violation can be rendered moot, that does not mean there was no violation. Either there was a violation or there wasn't. And so long as the case is not moot, the Court can decide that question. Here, Kincaid's taking and retaining a photograph of Omeish without her hijab ***was*** a violation of RLUIPA. Regardless of the availability of any particular form of relief, the violation still happened.

To determine whether a violation is redressable, the operative question is whether a remedy exists that will alleviate in some way the harm caused by the violation. *Iota Xi Chapter Of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 148 (4th Cir. 2009). A "remedy" is "anything a court can do for a litigant who has been wronged or is about to be wronged." *Black's Law Dictionary* 1320 (8th ed. 2004*); see also Knapp, Stout & Co. v. McCaffrey*, 177 U.S. 638, 644 1 (1900) ("A remedy is defined . . . as the means employed to enforce a right, or redress an injury.") (cleaned up). When a violation harms a plaintiff in multiple ways, it is sufficient, for standing purposes, that the court can redress any of the harms. It need not be able to relieve every injury. *Larson v. Valente*, 456

U.S. 228, 243 n.15 (1982).

Similarly, a case in which the plaintiff initially has standing becomes moot if, after initiated, the court can no longer remedy the injury, and the circumstances of the case indicate the parties no longer have any identifiable stakes in the outcome of the litigation. *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 191 (2000).

Conversely, a court retains jurisdiction—and thus the power to order a remedy—when there is some measure it can take to address a harm caused by a violation. And the permissible scope of what a court can do to address that harm is exceptionally broad and flexible. *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973). A district court may issue any injunctive relief necessary—but no more than necessary—to afford "complete relief" to a plaintiff whose rights have been violated by a defendant. *Mayor of Baltimore v. Azar*, 973 F.3d 258, 293 (4th Cir. 2020).

In a RLUIPA violation, the harm to the plaintiff is the substantial burden on her religious exercise. 42 U.S.C. § 2000cc–1(a). Here, Kincaid's agents removed Omeish's hijab in front of people of the opposite sex and photographed her. JA337-JA338. Kincaid then stored that uncovered

14

photograph in a way that made it available to all of Kincaid's officers and distributed that uncovered photograph to other law enforcement agencies. JA839.

Those actions substantially burdened Omeish's religious exercise in two ways. First, by allowing males in the Sheriff's Office to see her with her hijab off during booking. JA337-JA338. The harm of those men seeing Omeish is not redressable because it cannot be undone in any way. Second, by taking a photograph of Omeish without her hijab on and making that photograph available to other males both inside and outside the Sheriff's Office. JA839. This second harm was redressable until the last booking photo of Omeish without her hijab was destroyed as required by the injunction.

Omeish originally sought, among other things, a policy change. JA60. The district court limited the remedy, however, to the destruction of all copies of the photograph. JA106. But that did not mean that Kincaid adhered to her RLUIPA obligations when her agents took that uncovered photograph, or somehow limited the question in the case to whether the retaining of some photograph they just happened to have possession of violated RLUIPA.

15

## II. The undisputed evidence was that Kincaid's taking and retention of the photograph violated her right to be seen without her hijab on either in person or in photographs.

To prevail on a RLUIPA claim, the plaintiff must show that the government's actions substantially burdened her sincere religious beliefs. *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015). The burden then shifts to the government to show that burdening those beliefs was the least restrictive means of enforcing a legitimate penological interest. *Id.* at 362.

Kincaid complains that the District Court shifted the burden of proving substantial burden from Omeish to Kincaid. But under summary judgment standards, the moving party merely bears the initial burden of "show[ing] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). The burden then shifts to the non-moving party to show "a genuine issue of material fact for trial by offering sufficient proof in the form of admissible evidence." *Id.*

Here, Omeish met her initial summary-judgment burden. She showed that she has a sincere religious belief in not being seen without

16

her hijab, in person or in photographs, by men outside of her immediate family. JA140 ¶¶ 5-8. And she has shown that Kincaid's taking, retaining, and sharing her photograph violates this belief because the "availability of her images to law enforcement agencies and the public constitutes ongoing harm from which she is suffering." JA145 ¶ 37; *see also* JA84. Omeish elaborated, based on admissible evidence, that the photograph was available without any known restrictions to members of Kincaid's office, the Virginia State Police, and an unknown number of other law enforcement agencies. JA143-JA144 (MSJ ¶¶ 25-28). Omeish further explained that nothing prohibited Kincaid from publishing the photo at any time, and that even if Kincaid did not voluntarily do so, the photograph was subject to mandatory disclosure under state FOIA law. *Id.*; *see also* Va. Code §2.2-3706(A).

Kincaid's opposition to summary judgment, like her appeal brief, did not dispute the sincerity of Omeish's religious beliefs. Kincaid also did not dispute that the photograph was sent to the Virginia State Police. While she made some vague and general challenges to the remaining factual claims, JA1048, at no point did Kincaid deny that members of her office had unrestricted access to the photograph or that it was shared

with other law enforcement agencies—which we now know to include the Fairfax County Police Department and the FBI, JA1135. And while Kincaid disputed that she would release the photograph to the public or in response to a FOIA request, Kincaid neither disputed she had the power to do the former nor provided any legal explanation on how she might avoid the state law obligation to provide the uncovered photograph upon request. JA1036.[3]

The result is that Kincaid's response did not establish any actual dispute of fact sufficient for the District Court to deny Omeish's Motion for Summary Judgment. Even taking all the facts in the light most favorable to Kincaid, it is undisputed that Omeish's sincere religious beliefs were substantially burdened by the taking and retaining of the photograph.

The harm caused to Omeish was multifold. To take the uncovered photograph, Kincaid's officers had to first deny Omeish her express request to keep her hijab on in accordance with her faith. JA333-JA337 After Kincaid took a picture of Omeish without her hijab, she made it

---

[3] Nor is the possibility of FOIA speculative, as Omeish is an elected School Board official, with political opponents who have every reason to obtain a booking photograph of her. JA164.

available to all employees at the Sheriff's Office. JA1087. Kincaid did not stop there, however, and distributed the photograph to the Virginia State Police and other law enforcement agencies, where all officers at those agencies would be able to see the photograph. *Id*. As if this was not enough, Kincaid retained the picture under Virginia open records law and would be required to provide the photograph to anyone who asked for it using a valid FOIA request. *Id.*

Kincaid nevertheless suggests that she met her burden to show a genuine issue of material fact for trial because Kincaid's 30(b)(6) designee testified in a deposition that the office would have no reason to publish or disclose the photograph to members of the public. JA1033. That argument misunderstands the standard. Kincaid violated RLUIPA by taking and retaining the photograph. Whether she releases it to the public in the future goes to the extent of the harm caused by the violation, which is not a matter of the appropriateness of summary judgment but of the scope of the injunction. *See* §§ IV-V, *below*.

But even if Kincaid's disinclination to voluntarily publish the photo did bear on whether Omeish's religious beliefs were substantially burdened by Kincaid's actions in the first instance, the risk of voluntary

publication was just one of the ongoing harms described above that the district court's injunction was aimed at addressing. The others—including viewing by officers at four separate law enforcement agencies and the photograph being subject to FOIA under Virginia law, remained ongoing until all copies of the photograph were destroyed.

## III.  The Summary Judgment Order was not beyond the scope of the case.

Kincaid separately contends that the Summary Judgment Order went beyond the scope of the case because the Court described Kincaid's RLUIPA violation as the "taking and retention" of the photograph despite supposedly earlier limiting the case to retention. For the reasons explained in Section I, the fact that the District Court limited the remedy in the case did not change the scope or nature of the RLUIPA violation. After all, what is the purpose of taking a photograph, if not to retain it? And for the reasons explained in Section II, Kincaid's continued retention and distribution of the uncovered photograph increased the scale of the RLUIPA violation, which the District Court took into account when it fashioned a successful remedy.

Even if the District Court's partial dismissal that limited the remedy somehow also limited the cause of action, that decision is

inherently interlocutory. Unless certified as final, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also American Canoe Assoc. v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) ("[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted."). To the extent there is any conflict between the District Court's decision on dismissal and the decision on summary judgment, the latter controls.

## IV.    Omeish obtained relief from the injunction.

Next, Kincaid argues that the District Court erred because Omeish would receive no relief from "a properly tailored injunction." But as explained in Section I, above, whether an injunction is properly tailored depends on whether it would provide relief to Omeish. Here it did—the injunction caused all copies of Omeish's photograph without her hijab on to be destroyed. That, in turn, prevented agents of Kincaid's staff, the

21

FBI, the Fairfax County police Department, and the Virginia State Police from being able to view the photograph against her religious beliefs. It further prevented the photograph from being disseminated to the public at large, either voluntarily or in response to a valid FOIA request.

At best, Kincaid's argument is derivative of her argument that the District Court had irreversibly limited the case in its Motion to Dismiss decision. *See* § III, above.

## V.    The Relief sought did not go beyond the powers of the District Court.

Finally, Kincaid claims that the injunction in this case exceeded the District Court's power. Most of the arguments she makes are derivative of her other arguments addressed above. Those that are not derivative still fail, either because they fundamentally misunderstand or misdescribe the injunction or for the reasons explained in Section I, above.

First, Kincaid complains about the parts of the injunction requiring her to use her best efforts to determine what other parties had copies of the photograph and to ensure that those copies were destroyed. According to Kincaid "the injunctive relief ordered attempts to circumvent the fact that the other agencies' retention of the booking photograph has not been

held as a matter of law to violate RLUIPA." But as explained in Section I, Kincaid's taking and retaining the photograph was held to violate RLUIPA as a matter of law, and that violation was the direct cause of the photograph ending up in the hands of the FBI, the Virginia State Police, and the Fairfax County Police Department. The District Court had wide latitude to impose an injunction that undid that harm.

Second, Kincaid suggests that the District Court did not have the authority to bind those other law enforcement agencies because they were not before the District Court at the time the injunction was issued. But even if Kincaid somehow had the authority to assert the rights of others in this appeal, the District Court's injunction did not purport to bind those other agencies in the slightest. JA1106-JA1107. Rather, it required Kincaid to use her own best efforts to have those agencies destroy the photograph, and to report back to the Court whether or not she succeeded. *Id.*

Indeed, Kincaid ultimately complied with the injunction and asked the other agencies to destroy the photograph. JA1145 And the FBI, the Virginia State Police, and the Fairfax County Police Department each voluntarily destroyed their copies of photograph in response. *Id.* As a

result, there is no continuing obligation on anyone, even Kincaid. This appeal is moot.

Finally, to the extent Kincaid complains that Omeish did not allege in her Complaint that third parties had copies of the photograph, Rule 8 does not require such a detailed level of pleading. In any event, Omeish did not know the extent of distribution until discovery. Any lack of specificity in the Complaint about who else possessed the photograph would not restrict the scope of the District Court's remedial powers.

## CONCLUSION

The Court should dismiss the appeal as moot. In the alternative, the Court should affirm the decision of the District Court.

Respectfully submitted,

CAIR LEGAL DEFENSE FUND
BY: /s/ Lena F. Masri
Lena F. Masri (VA 93291)
lmasri@cair.com
Gadeir I. Abbas (VA 81161)
gabbas@cair.com
Justin M. Sadowsky (VA 73382)
jsadowsky@cair.com
453 New Jersey Ave., S.E.
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 488-0833

## CERTIFICATE OF COMPLIANCE

This document complies with type-volume limits of Fed. R. App. R. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. R. 32(f), this brief contains 4,722 words.

This complies with the typeface and type style requirements because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ Lena F. Masri
Lena F. Masri